Argued January 18, affirmed February 15, 1927.

IN THE MATTER OF OREGON TUNNEL DISTRICT No. 1.

OREGON TUNNEL DISTRICT No. 1 v. R. S. MOORE ET AL.

(253 Pac. 1.)

Constitutional Law—Elections—Statute Authorizing Only Persons Owning More Than Five Thousand Square Feet of Land to Vote at Election on Question of Forming Tunnel District Held Based on Unreasonable Classification (Laws Or. 1921, p. 602; Const. U. S. Amend. 14, § 1; Const. Or., Art. I, § 20).

1. Laws Or. of 1921, page 602, relating to creation of tunnel districts and providing that only persons owning more than 5,000 square feet of land within proposed district shall be entitled to

vote at election to determine whether district shall be formed *held* violative of Const. U. S. Amend. 14, Section 1, and Const. Or., Article I, Section 20, as based on an unreasonable classification.

**Constitutional Law—Legislative Classification must be Reasonable and Based on Some Real and Substantial Distinction.**

2.   It is not within legislative power of the state to make a classification which confers on one class privileges and immunities which are denied to another class unless the classification is a reasonable one and based on some real or substantial distinction.

**Constitutional Law—Right not to be Discriminated Against is Personal and not Dependent on Number of Persons Affected.**

3.   The constitutional right not to be discriminated against is a personal one, which does not depend on number of persons affected.

**Constitutional Law—Constitutionality of Statute, Improperly Disqualifying Persons from Voting in Particular Election Held not Affected by Fact That Disqualified Electors Could not have Changed Election Result (Laws 1921, p. 602).**

4.   The fact that votes of persons disqualified by Laws of 1921, page 602, from voting on question whether tunnel district shall be formed, if cast on the losing side, would not have changed the result of the election, *held* immaterial on question of constitutionality of statute.

**Constitutional Law—Constitutionality of Statute is Determined by Acts Authorized, not Those Actually Done Under It.**

5.   Constitutionality of a statute is ordinarily to be tested, not by what is actually done under it, but by what it authorizes and permits to be done.

---

Constitutional Law, 12 C. J., p. 1130, n. 28, 30, 31, p. 1148, n. 18, p. 1149, n. 19, 20.

From Washington: GEORGE R. BAGLEY, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Joseph, Haney & Littlefield* and *Mr. John C. Veatch, Mr. E. B. Tongue* and *Mr. W. G. Hare*, with oral arguments by *Mr. Veatch* and *Mr. Tongue*.

---

2.   See 6 R. C. L. 378.
5.   See 6 R. C. L. 112.

For respondents there was a brief and oral argument by *Mr. W. Lair Thompson.*

RAND, J.—1. This is an appeal from a decree holding that Chapter 319, Laws of 1921, an act providing for the formation of tunnel districts, contravenes Section 1 of the Fourteenth Amendment to the Constitution of the United States, and Section 20 of Article I of the state Constitution, rendering the act unconstitutional and void.

The act provides, that upon the petition of fifty. or a majority of the owners of land within a proposed tunnel district, if compliance has been had with certain other provisions of the act, an election shall be held to determine whether the proposed district shall be formed, and expressly provides that at said election and at all subsequent elections held pursuant to the act, the right of the owners of land within the district to vote shall be limited and restricted to those persons only who own land within the district having an area of 5,000 square feet or more. The act authorizes the district, when formed, to issue and sell bonds for any amount that the board of directors may deem to be necessary to carry out the purposes of the act, and makes the amount of such bonds a lien upon all lands within the district, and in providing for the payment thereof it directs that all such lands shall be taxed according to their assessed valuation as such valuation appears upon the assessment-roll of the county or counties in which the lands lie.

Respondents each separately own taxable real property having an area of less than 5,000 square feet within the boundaries of the district designated as Oregon Tunnel District No. 1, and under the express

provisions of the act, they and all other persons similarly situated. are excluded from voting at any election held by the district, or from in any way participating in the management or control of the affairs of the district. The boundaries of the district in question, include a very. large area of farm land in Washington County, and a comparatively much smaller area of city property in Multnomah County. All of the lands within the district in Multnomah County are in the City of Portland, and most of such lands consists of highly improved business property. It is stipulated that the total assessed valuation of all lands in Washington County, within said tunnel district No. 1, is $3,714,015, and that the total assessed valuation of all lands in Multnomah County, within said tunnel district, is $92,328,940, and that in Multnomah County, including respondents, there are 444 separate owners of land having an area of less than 5,000 square feet, the total aggregate assessed valuation of which is $4,136,965. It is also stipulated, that at an election held to determine whether Oregon Tunnel District No. 1 should be created, 1,556 votes were cast in Washington County, and 1,285 votes in Multnomah County, and that as canvassed in Washington County, 1,285 persons voted for, and 290 persons against, the creation of the district, and in Multnomah County, 612 voted in favor of, and 673 against, the creation of the district, and that at said election, certain of the respondents offered. but were denied the right to vote, upon the sole ground that the area of the lands owned by them within the district  was less than 5,000 square feet. It is also stipulated that some of the main business streets in the City of Portland, have been widened by appropriating for street

purposes a portion of the abutting lots, thereby reducing the area of said lots to less than 5,000 square feet, and it is the owners of such lots who by the act are deprived of the right to vote, or to have any voice in the management of the affairs of the district.

2. It will thus be seen, that under the provisions of this act all owners of taxable real property within the district are divided into two classes; those owning land of 5,000 feet or more in area, and those owning land of a less area, and that the classification has no real or substantial relation to the objects and purposes of the act. It is not within the legislative power of the state to make a classification which confers upon one class, privileges and immunities which are denied to another class, unless the classification is a reasonable one and is based upon some real and substantial distinction between the two.

The purpose of this act is to create a local improvement territory and to spread the burden of paying for the improvement by levying an *ad valorem* tax upon the property benefited, which under this act consists only of the real property within the district. The amount of the tax, which under the act may be levied against the real property of the various land owners of the district, is not to be determined by the area of the land held by them, but is to be determined solely by the assessed valuation of the land appearing on the assessment-roll of the county. Under these circumstances, the area of the land upon which the tax is to be levied cannot in any way affect the burden imposed, and therefore this classification based on area alone can have no reasonable relation to the object sought to be accomplished by the act. If the tax to be imposed was to be based upon area

and not upon value, there would be a reasonble rela-
tion between the area and the object of the legislation,
but since value and not area determines the amount
of the tax which is to be imposed against the land
owners within the district, any classification which
disregards value and is based on area alone, and
gives to one owning more land but of less value  any
right, privilege or immunity which is denied to an-
other owning less land, but of greater value, denies
to the latter the protection of equal laws and violates
both the state and federal Constitutions.  The classi-
fication contained in this act is purely arbitrary and
creates discriminations not based upon any real or
substantial differences or distinctions.  In order that
a statute be valid which contains a classification of
persons or things for the purpose of legislation, such
classification must be a reasonable one and must be
based on real distinctions in the subject matter which
bear some relation to the objects sought to be accom-
plished by the statute: 12 C. J., pp. 1148, 1149.

3–5. The fact that if all of the disqualified property
owners in the district had voted against the creation of
the district, it would not have changed the result of the
election, is of no importance, since the constitutional
right not to be discriminated against is a personal
one, and does not depend on the number of persons
who may be discriminated against: *McCabe* v. *Atchison
etc. R. Co.*, 235 U. S. 151 (59 L. Ed. 169, 35 Sup. Ct.
Rep. 69).  The discrimination involved here is a con-
tinuing one, and if the law were valid, would apply to
all future elections of the district.  The constitution-
ality of the statute is ordinarily to be tested not by
what has actually been done under it, but what it
authorizes and permits to be done: *Sterett & Oberle*

*Packing Co.* v. *Portland,* 79 Or. 260, 271 (154 Pac. 410).

There is no ground upon which this classification can be upheld; the act, therefore, is unconstitutional and void and the decree of the Circuit Court must be affirmed.                                          AFFIRMED.

COSHOW, J., not sitting, and BELT, J., not participating in the decision.