Submitted on briefs March 4; reversed and remanded March 25; rehearing denied June 3, 1930

## STATE *v.* KINCAID
### (285 P. 1105, 288 P. 1015)

*Don R. Newbury* of Medford for appellant.

*George Codding* of Medford, District Attorney, and *I. H. Van Winkle* of Salem, Attorney General, for the State.

BROWN, J. The indictment alleges, in substance, that, on June 15, 1929, without having obtained a license therefor, and contrary to statute, the defendant, for compensation paid to him, unlawfully conducted a public dance in a public dance hall situate in the corporate limits of Gold Hill, a town in Jackson county, Oregon, having a population of less than 500, to wit, 442.

The defendant asserts that the statute involved is unconstitutional, alleging, among other reasons therefor, that dance halls are not subject to regulation by the state. We cannot follow counsel. It is well-established law in this state that the police power includes regulation and supervision of amusements and places of amusement. See *Slovanian L. & S. Ass'n v. City of Portland,* 111 Or. 335 (224 P. 1098); *Daniels v. City of Portland et al.,* 124 Or. 677 (265 P. 790, 59 A. L. R. 512). In the latter case it was alleged that an ordinance relating to the requirements as to windows for rooms occupied for living purposes was unconstitutional as being in conflict with sections 1, 18, and 21, of article 1, Oregon Constitution, and contrary to the fourteenth amendment to the constitution of the United States. In our decision of that case we held that regulation by a city of hotels, tenements, and lodging houses under the police power is a proper subject for legislative action, but that the degree of regulation should be reasonable,

and not arbitrary. So, in all cases, the reasonableness of any given statute is primarily for legislative judgment, and the judiciary will declare it invalid only when manifestly unreasonable. As bearing upon this subject, we note the following expression of our court appearing in *Daniels v. City of Portland,* supra:

"The police power is a law of necessity, and its extent 'must from time to time conform to the growth of our social, industrial and commercial life. You cannot put a strait-jacket on justice any more than you can put a strait-jacket on business': 2 Cooley's Constitutional Limitations (8th Ed.), p. 1227."

The defendant contends that the statute offends against section 20, article 4, Oregon Constitution, which provides:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."

In answer to this objection, we refer to the case of *State v. Shaw,* 22 Or. 287 (29 P. 1028). In that case it was alleged by the indictment that the defendant unlawfully discharged and deposited sawdust, planer shavings and other lumber waste into the waters of the Santiam river in violation of section 8 of a statute (Gen. Laws 1891, p. 35) entitled, "An act to protect salmon and other food fishes in the state of Oregon and upon all waters upon which this state has concurrent jurisdiction, and to repeal," etc. A demurrer to the indictment having been sustained by the trial court, the indictment was dismissed and the state appealed. The opinion of the court discusses fully the history and purpose of the constitutional provision alleged to have been violated, and the mischief against which the title was aimed. In determining the issue there presented, the court held that the act under which Shaw

was indicted contained provisions of law that related directly or indirectly to the same subject, and which were not foreign to any object expressed in the title.

■ The early case of *State v. Shaw,* supra, is also authority for the proposition that, in indictments for statutory offenses, it is sufficient to charge the crime in the words of the law, providing the crime is thereby set forth with such certainty as will advise the defendant of the offense imputed to him. Since the decision in that case the doctrine enunciated therein has been repeated again and again in the opinions by this court.

The defendant assails the statute as unconstitutional upon the ground that it is in conflict with section 20, article 1, of our fundamental law. Similar contentions involving imaginary conflict between the statute and this section of the constitution have been before this court many times. For an elaborate discussion of the meaning of the provisions of this section, see *State v. Randolph,* 23 Or. 74 (31 P. 201, 17 L. R. A. 470, 37 Am. St. Rep. 655). Also see *In re Oberg,* 21 Or. 406 (28 P. 130, 14 L. R. A. 577) ; *State ex rel. Bell v. Frazier,* 36 Or. 178 (59 P. 5) ; *Corporation of Sisters of Mercy v. Lane County,* 123 Or. 144 (261 P. 694), and cases cited; *State v. Joseph Smith,* 127 Or. 680 (273 P. 343) ; *U. S., etc., Club v. Van Winkle,* 128 Or. 274 (274 P. 308) ; *State v. Burroughs,* 130 Or. 480 (280 P. 653).

■ There is a presumption that statutes are not in conflict with the constitution, and in their construction all reasonable doubts must be resolved in favor of the constitutionality of the statute assailed: *Corporation of Sisters of Mercy v. Lane County,* supra. That the statute under consideration does not violate section 2, article 11, Oregon Constitution, see *Straw v. Harris,* 54

Or. 424 (103 P. 777) ; *Colby v. Medford,* 85 Or. 485 (167 P. 487) ; *Lovejoy v. Portland,* 95 Or. 459 (188 P. 207) ; *In re Boalt,* 123 Or. 1 (260 P. 1004).

■ Nor is this law invalid because it excepts from its operation municipal corporations having a population of 500 or more: *Ladd v. Holmes,* 40 Or. 167 (66 P. 714, 91 Am. St. Rep. 457, 6 R. C. L. 388, 12 C. J. 1134).

There arose in the trial of this cause an important question with relation to the admissibility of evidence offered to establish the population of Gold Hill. The indictment alleges that, on June 15, 1929, the defendant offended the statute in question by conducting a dance in a public dance hall in Gold Hill, "a town having a population of less than 500 people, to wit, 442 people," without a license from the Jackson county court.

■ As a general rule, judicial notice is taken of the population of towns and cities as declared by the census. See *Stratton v. Oregon City,* 35 Or. 409 (60 P. 905) ; *Smith v. City of Jefferson,* 75 Or. 179 (146 P. 809) ; 4 Nichols, Applied Evidence, 3646, 3647. According to the national census of 1920, being in point of time about nine years previous to the date of the alleged violation of the statute, the population of Gold Hill was 442. The defendant offered to show by his testimony that he had had the inhabitants of the town enumerated by certain enumerators, who had reported to him that the population was more than 500 on June 15, 1929, the date of the alleged commission of the offense. The enumeration by defendant was not an official census of the population of Gold Hill. His testimony in relation to what his enumerators had accomplished by way of taking the census was inadmissible because it was but hearsay. However, it would have been competent for him to place upon the

witness stand a qualified person who had ascertained the population of Gold Hill. Judicial notice would not preclude the court from establishing the truth. The purpose of receiving testimony in a trial is to arrive at the truth. The policy of the state of Oregon, as announced by its criminal procedure, is to acquit the innocent and convict the guilty; and, for the purpose of determining innocence or guilt, evidence is received. The state seeks the truth, and the whole truth, so far as relevant to the issues. The court did not err in refusing to admit the hearsay evidence.

But the law requires the state to prove every essential allegation of an indictment, to the satisfaction of the triers of fact, beyond a reasonable doubt. Therefore, before a conviction can be had in the case before us, the allegation contained in the indictment with respect to the population of Gold Hill at the time of the commission of the offense must be proved. The population of the town of Gold Hill in 1920 is one thing, and the population as charged in the indictment nine years after the official census is another. The state, not having proved the population of the town at the time of the alleged commission of the offense, has failed to establish the guilt of the defendant. In support of the doctrine that a court may take judicial notice of the approximate rate of increase in the population of a city or town, see *Times Printing Co. v. Star Publishing Co.*, 51 Wash. 667 (99 P. 1040, 16 Ann. Cas. 414); 16 Cyc. 870; 23 C. J., § 1987, p. 162.

This case is reversed and remanded.

Rehearing denied June 3, 1930

## On Petition for Rehearing
### (288 P. 1015)

The defendant has filed a petition for rehearing. For a statement of the case see our original opinion, wherein we held chapter 381, General Laws of Oregon, 1929, to be valid.

■ In our consideration of this petition, we are limited to the grounds set forth therein. The petition, in its entirety, reads:

"Comes now the appellant in the above entitled cause, and respectfully petitions the court for a rehearing, and that the opinion of the court made, rendered and filed March 25, 1930, be modified in the following particulars for the following reasons, to wit:

"1. That the law considered in said opinion be declared invalid and unconstitutional as constituting class legislation, because it makes an unreasonable classification between cities or towns having a population of 500 or more and those having a population of less than 500 for the purposes of said statute, and that the court erred in ruling and holding that—

" 'Nor is this law invalid because it excepts from its operation municipal corporations having a population of 500 or more.' "

■ In our original opinion we set forth a number of the leading authorities of this state that fully answer the contention of the appellant that the statute referred to is unconstitutional in that it is in conflict with section 20, article 1, of our fundamental law. These authorities hold that legislation which affects alike all persons pursuing the same business, under the same conditions, is not such class legislation as is prohibited by this section of the constitution. In addition, see *State v. Muller,* 48 Or. 252 (85 P. 855, 120 Am. St. Rep.

805, 11 Ann. Cas. 88); *Hall v. Dunn,* 52 Or. 475 (97 P. 811, 25 L. R. A. (N. S.), 193); *State v. Wright,* 53 Or. 344 (100 P. 296, 21 L. R. A. (N. S.) 349); *Churchill v. City of Albany,* 65 Or. 442 (133 P. 632, Ann. Cas. 1915A, 1094); *Simpson v. O'Hara,* 70 Or. 261 (141 P. 158); *Camas Stage Co. v. Kozer,* 104 Or. 600 (209 P. 95, 25 A. L. R. 27). See also *In re Oregon Tunnel Dist. No. 1,* 120 Or. 594 (253 P. 1).

■ In the first instance, the legislature is the judge of legislation necessary for the public benefit, and the legality of all police regulations depends upon whether they can ultimately pass the judicial test of reasonableness: *Union Fishermen's Co-Operative Packing Co. v. Shoemaker,* 98 Or. 659 (193 P. 476, 194 P. 854). We believe that the statute in question will stand this test.

In the case of *Rast v. Van Deman & Lewis,* 240 U. S. 357 (36 S. Ct. 370, 374, 60 L. Ed. 679, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421), there appears the following expression by the highest tribunal of our land, where the court, speaking through Mr. Justice McKenna, thus announced the rule of law applicable to a situation like the one before us:

"It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed: *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78 (55 L. Ed. 369, Ann. Cas. 1912C, 160, 31 Sup. Ct. Rep. 337). It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety: *Chicago, B. & Q. R. R. v. McGuire,* 219 U. S. 549 (55 L. Ed. 328, 31 Sup. Ct. Rep. 259); *German Alliance Ins. Co. v. Kansas,* 233 U. S. 389, 413, 414 (58

L. Ed. 1011, 1022, L. R. A. 1915C, 1189, 34 Sup. Ct. Rep. 612); *Price v. Illinois*, 238 U. S. 446, 452 (59 L. Ed. 1400, 1405, 35 Sup. Ct. Rep. 892).

"It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury but obstacles to a greater public welfare: *Eubank v. Richmond*, 226 U. S. 137, 142 (57 L. Ed. 156, Ann. Cas. 1914B, 192, 42 L. R. A. (N. S.) 1123, 33 Sup. Ct. Rep. 76); *Sligh v. Kirkwood*, 237 U. S. 52, 59 (59 L. Ed. 835, 837, 35 Sup. Ct. Rep. 501). And, we repeat, 'It may make discriminations if founded on distinctions that we can not pronounce unreasonable and purely arbitrary': *Quong Wing v. Kirkendall*, 223 U. S. 59, 62 (56 L. Ed. 350, 32 Sup. Ct. Rep. 192), and cases cited above."

A statute that has stood the test of time and affords an excellent example of classifications permitted under the police power is the old liquor statute enacted by the legislature of this state in 1889, which provided:

"No person shall be permitted to sell spirituous, malt or vinous liquors in this state in less quantities than one gallon without having first obtained a license from the county court of the proper county for that purpose": Gen. Laws of Oregon, 1889, p. 9, § 1.

That statute provided for a four-hundred-dollar license per annum, and a bond in the penal sum of $1,000. At section 11 thereof it was provided that the act should be so construed as not to apply in any manner to incorporated towns and cities of this state.

With respect to the contention of defendant as set out in his petition for a rehearing, it has been held by eminent authority that a law is general and uniform, not because it operates upon every individual in the state but because every person brought within the relations provided for in the statute is within its provisions. See *Winston v. Moore*, 244 Pa. St. 447 (91 Atl. 520, Ann. Cas. 1915C, 498, L. R. A. 1915A, 1190).

■ ■ On the subject of class legislation much might be written. But further citation or discussion is deemed unnecessary. It is not the business of the court, but the province of the legislature, to determine the necessity, the expediency, and the wisdom of legislation. In the interpretation of such legislation the presumption is in favor of its validity and, in the instant case, this presumption has not been overcome. The legislature had a right to omit to regulate dance halls in incorporated cities having more than 500 inhabitants on the ground that such municipalities were capable of protecting their own citizens who patronize the public dance.

The petition for rehearing will be denied.