ARTHUR P. RUGG.
JOHN C. CROSBY.
EDWARD P. PIERCE.
FRED T. FIELD.
CHARLES H. DONAHUE.
HENRY T. LUMMUS.
STANLEY E. QUA.

OPINION OF THE JUSTICES TO THE SENATE AND THE HOUSE OF REPRESENTATIVES.

At a joint session of the Senate and the House of Representatives held according to art. 48 of the Amendments to the Constitution of the Commonwealth, an affirmative vote of more than one fourth of the members on an initiative petition for an amendment of the Constitution may be reconsidered by vote of a majority of the members present; a vote to reconsider would not be "an unfavorable vote" at a "stage preceding final action" within art. 48, Part IV, § 4, and may be by voice vote (FIELD and LUMMUS, JJ., dissenting); and after reconsideration, the petition still would be pending before that General Court for further action at either of its annual sessions, and could be submitted to another joint session of the two branches without further committee proceedings.

On June 28, 1935, the following order was adopted:

WHEREAS, At a joint session of the two houses of the General Court held on the eleventh day of June, current, in pursuance of the provisions of article XLVIII of the amendments to the constitution of the commonwealth, a proposal for an initiative amendment to the said constitution providing for biennial sessions of the General Court and a biennial budget, printed as current house document three hundred and five, whereof a copy is

herewith submitted, received the affirmative votes of seventy-one senators and representatives, taken by yeas and nays, and was therefore agreed to, more than one fourth of all the members elected to the two houses having voted in the affirmative, and the President thereupon announced that under the provisions of said article XLVIII the proposal would be referred to the next General Court; and

WHEREAS, Immediately following the declaration of the said vote agreeing to said proposal and said announcement of reference, a motion to reconsider the same was made, whereupon the President of the joint session announced that this motion would be subject to Rule 70 of the House of Representatives, said rules, so far as applicable, having been duly adopted to govern the proceedings of the joint session by Rule G of the Special Rules with reference to the consideration of said proposal, as set forth in the Calendar of the joint session of the two houses for Tuesday, June eleventh, nineteen hundred and thirty-five (and for subsequent sessions, if ordered), a copy of which is herewith submitted, and that accordingly the motion would be considered at a subsequent joint session to be agreed upon, and thereupon declared the joint session to be dissolved; and

WHEREAS, In pursuance of orders severally adopted by the two houses of the General Court, a second joint session was held on the twelfth day of June, for the purpose of considering the motion to reconsider the vote by which the convention agreed to the said proposal, and on a voice vote the motion to reconsider prevailed, after a point of order that the joint session then being held was without warrant in the constitution had been made and ruled out as not well taken. (For further details as to said point of order and the President's ruling thereon, reference is respectfully made to the Journal of the Senate for the twelfth day of June, page 1032, and to the Journal of the House of Representatives for said day, page 1335); and

WHEREAS, At said session, pending the recurring question

on agreeing to the said proposal, further consideration thereof was postponed until the two houses should meet again in joint session, and adjournment was voted; and WHEREAS, On the nineteenth day of June a third joint session was held for the purpose of continuing the consideration of said proposal, in pursuance of orders severally adopted by the two branches, and by a roll call vote of one hundred and thirty-one yeas to one hundred and twenty-five nays, further consideration of the proposal was postponed until the two houses should meet again in joint session, and the convention then adjourned; and

WHEREAS, On the twenty-fifth day of June a fourth joint session was held for the purpose of continuing the consideration of said proposal, in pursuance of orders severally adopted by the two houses, and by a roll call vote of one hundred and fifty yeas to one hundred and seven nays, the proposal was committed to a special committee, to consist of the members of the Committees on Rules of the two branches, with instructions to report its recommendations at such time as the two houses should meet again in joint session; and

WHEREAS, Grave doubt exists as to the effect of the proceedings above set forth (for a more detailed description of which reference is respectfully made to the journals of the two houses, whereof copies are herewith submitted) and whether further action is constitutionally warranted or required at the present session of the General Court, accordingly the General Court requires the opinions of the Honorable the Justices of the Supreme Judicial Court on the following questions of law: —

1. Did the affirmative votes of seventy-one members agreeing to said proposal at the joint session held on the eleventh day of June constitute "final action" thereon within the meaning of said article XLVIII?

2. Was said vote subject to reconsideration?

3. If subject to reconsideration, could reconsideration constitutionally be voted other than by a call of the yeas and nays?

4. If subject to reconsideration, could reconsideration constitutionally be voted by a majority vote, or, in view of the requirements of the constitution as to an affirmative vote, would reconsideration require a vote of a higher degree than a majority vote?

5. If the reconsideration voted as aforesaid at the second joint session was for any reason futile or invalid, is the proposal still constitutionally open to reconsideration at any future joint session?

6. If said proposal has not been finally disposed of, may another joint session constitutionally defer further action thereon to the next annual session of the General Court?

7. If further action may so be deferred, could said proposal, conformably to the constitution, be submitted to a joint session of the two houses without committee proceedings thereon?

8. If another joint session of the two houses should vote to defer further action on such proposal to the next annual session of the General Court, would it be within the powers of the Governor of the Commonwealth, under said article XLVIII, to call a joint session for immediate action thereon?

On July 1, 1935, the order was transmitted to the Justices, who, on July 8, 1935, returned the following answers:

To The Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions in an order adopted by each branch of the General Court on June 28, 1935, and transmitted to them on July 1, 1935, copy whereof is hereto annexed.

The questions relate to legislative action upon a proposal for an amendment to the Constitution introduced by initiative petition. That initiative amendment was seasonably laid before a joint session of the two houses of the General Court. Special rules previously had been adopted as to

procedure in that joint session. One provided in part that the "rules of the House of Representatives shall govern the proceedings in the joint sessions in all cases to which they are applicable, and in which they are not inconsistent with the provisions of Article XLVIII of the Amendments of the Constitution." At a joint session held on June 11, 1935, on a vote of yeas and nays on the question of agreeing to the proposed initiative amendment, the votes of seventy-one members were in the affirmative, being more than one fourth of all the members. Thereupon it was announced that the proposal for amendment would be referred to the next General Court pursuant to art. 48 of the Amendments to the Constitution. Immediately, a motion to reconsider was made, which was entertained under rule 70 of the House of Representatives; at a joint session held on June 12, 1935, on a voice vote the motion to reconsider prevailed subject to a point of order that the action taken on June 11, 1935, was final and that the joint convention of June 12, 1935, was without warrant.

Pertinent provisions of art. 48 of the Amendments are in "The Initiative," Part IV, entitled "Legislative Action on Proposed Constitutional Amendments." Section 4 of that Part IV is in these words so far as material: "Final legislative action in the joint session upon any amendment shall be taken only by call of the yeas and nays . . . an unfavorable vote at any stage preceding final action shall be verified by call of the yeas and nays . . . At such joint session . . . an initiative amendment receiving the affirmative votes of not less than one-fourth of all the members elected, shall be referred to the next general court." Rule 70 of the rules of the House of Representatives provides for reconsideration of a vote by formalities which, according to the recitals preceding the questions in the order, appear to have been followed.

The joint session of the two houses of the General Court enjoined by art. 48 of the Amendments for the consideration of a proposal for an initiative amendment to the Constitution is a legislative assembly. It is designed to give opportunity for debate and deliberation concerning the mat-

ter before it commensurate with the importance always accompanying a proposal to amend the frame of government established by the Constitution. It is required by "The Initiative," Part III, § 1, of art. 48 of the Amendments that a measure introduced by an initiative petition be referred to a committee which, after a hearing to the petitioners and all parties interested and after considera᠊ tion, shall report its recommendations and the reasons therefor in writing to the General Court. The proposal for an initiative amendment may be amended by a vote of three-fourths of the members voting thereon in joint session. "The Initiative," Part IV, § 3. A substitute for such proposal for amendment may be submitted to the people as an alternative by majority vote in joint session in each of two successive General Courts. "The Initiative," Part III, § 2. The joint session by necessity possesses the ordinary prerogatives of a deliberative legislative body. One of these is to adopt rules for the regulation of its conduct. Reconsideration of votes is recognized practice in legislative bodies in this country. *Nevins* v. *City Council of Springfield,* 227 Mass. 538, 545–546. *Mansfield* v. *O'Brien,* 271 Mass. 515, 518–519. Concerning reconsideration, a rule is generally formulated. Article 48 of the Amendments under "The Initiative," Part IV, § 4, calls for "Final legislative action" by the joint session in a specified way. It does not prevent the joint session from adopting rules to regulate procedure touching the matters to be considered. Neither its words nor its general purpose precludes the joint session from making a rule to permit and to govern reconsideration of votes taken by it. "Final legislative action" in this connection means such action according to established legislative procedure modified by the constitutional requirements of art. 48 of the Amendments. The vote of the joint session of June 11, 1935, whereby the proposal for the initiative amendment received the affirmative votes taken by yeas and nays of more than one-fourth of all the members elected to the two houses was final action, subject, however, to recon-

sideration. It did not stand as final action because, in conformity to the rules, motion for reconsideration was made forthwith. Adverse disposition must be made of that motion before the earlier vote would stand as the final action of the joint session.

There is no express requirement in art. 48 of the Amendments that the vote on the motion for reconsideration be taken by a call of the yeas and nays. It is only the "Final legislative action" and "an unfavorable vote at any stage preceding final action" which must be verified by a call of the yeas and nays. "The Initiative," Part IV, § 4. The vote by the joint session to reconsider the vote taken on June 11, 1935, was not "unfavorable" to the proposed initiative amendment. It was not an expression antagonistic to the merits of that amendment. It was a vote to give to that amendment further reflection, renewed attention, and more careful deliberation. While the adoption of a motion to reconsider a vote already taken may open the way for a reversal of that vote, it does not import such reversal. It involves temporary postponement of final action. It merely provides for a new vote on the original question after more mature consideration. What may be the result of that new vote, whether affirmative, or negative, or different as compared with the earlier vote, depends upon the judgment of the members of the assembly when it is taken. Whatever may be the state of mind reflected by a vote to reconsider, it cannot in our opinion be held to be an "unfavorable vote" in the sense in which those words are used in the portion of art. 48 of the Amendments already quoted. Therefore, the vote on reconsideration was not required expressly or by implication to be by yeas and nays but might be by voice vote.

It is the general rule that reconsideration may be voted by a majority of a legislative body, although affirmative final action may require the votes of a different proportion of the members, either more or less than a majority. It was held in *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 543 to 547, after some review of precedents, that a

vote on a matter requiring two-thirds of those present and voting in order to pass it, might be reconsidered by a majority vote. The principle of that decision requires the conclusion that there is nothing in art. 48 of the Amendments requiring a vote of higher degree than a majority vote in order to adopt a motion for reconsideration of the vote of the joint session taken on June 11, 1935. *Adams* v. *Townsend Schoolhouse Building Committee*, 245 Mass. 543, 547–549. See also vol. 56, part 11, Congressional Record, pages 11037 to 11040. (Oct. 3, 1918.)

A proposal for an initiative amendment must be considered at a joint session convened not later than the second Wednesday of June after its transmittal to the General Court. Further pertinent provisions of "The Initiative," Part IV, § 2, of art. 48 of the Amendments are in these words: "if the two houses fail to agree upon a time for holding any joint session hereby required, or fail to continue the same from time to time until final action has been taken upon all amendments pending, the governor shall call such joint session or continuance thereof." This section was framed, approved and voted to be submitted to the people by the Constitutional Convention in 1917 at a time when there were annual elections for the choice of members of the General Court. Its words doubtless were adapted to that situation. Biennial elections are now required by art. 64 of the Amendments to the Constitution. This Amendment was approved and voted to be submitted to the people by the Constitutional Convention several months later than art. 48. Both amendments were adopted at the State election of 1918. *Opinion of the Justices*, 286 Mass. 611, 622. The terms of senators and representatives now are in substance two years from the first Wednesday in January succeeding their election, but the General Court is required to assemble on the first Wednesday of January in each year. Art. 64 of the Amendments, §§ 1, 3. The precise point is raised whether by the words of Part IV, § 2, just quoted, final action on a proposal for an initiative amendment is confined to that assembling of the General

Court at which it is presented, or whether final action may be taken at its second session.

The official life of each branch of the General Court has been lengthened to two years instead of being limited to a single year, as it was before the adoption of art. 64 of the Amendments. The provision of that article, to the effect that the General Court shall assemble every year, does not break the continuity of its existence as a legislative body. It simply prescribes two sessions for each General Court. In this particular, each branch of the General Court resembles the House of Representatives of the Congress of the United States, which, although required to assemble at least once in every year, is a single continuous legislative body for the two years for which its members are chosen. *Opinion of the Justices*, 239 Mass. 603, 605. Articles 48 and 64 of the Amendments are equally parts of the Constitution. They stand on the same footing. They are to be construed and interpreted in combination with each other and all other parts of the Constitution as forming a single harmonious instrument for the government of the Commonwealth. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 524. *Opinion of the Justices, ante,* 572, 575–576. In the main under art. 64 (with exceptions not here material, see, for example, arts. 17, 25 and 63 of the Amendments) it is for the General Court to determine whether legislative action shall be taken on any pending matter at its first or second session. Nothing in the phraseology of Part IV, § 2, of "The Initiative" of art. 48 is imperative that the joint session convened in accordance with its terms must take final action respecting the matter pending before it within any specified time. Such action must be taken at some time. The mandate is that the joint session shall continue from time to time until final action is taken. That imports the flexibility as to time of final decision dictated by the wisdom and conscience of the legislative assembly upon which is cast the responsibility for disposing of the matter. No exigency as to action at one session or the other arises from the nature of the business to be transacted. The proposed initiative

amendment cannot be submitted to the people until it has received the specified vote of a joint session of two successive General Courts.  Whether favorable final legislative action on the proposed amendment be taken at the current or at the next session of the present General Court cannot accelerate, retard or affect the submission of the amendment to the people.  Part IV, § 5, of "The Initiative" of art. 48 of the Amendments.

The answer to the first question is "No."

The answer to the second question is "Yes."

The answer to the third question is "Yes."

The answer to the fourth question is that a majority vote was sufficient for reconsideration.

It is not necessary, in view of what has been said, to answer the fifth question.

The answer to the sixth question is "Yes."

The answer to the seventh question is "Yes."

It is not necessary, in view of what has been said, to answer the eighth question.

ARTHUR P. RUGG.

JOHN C. CROSBY.

EDWARD P. PIERCE.

CHARLES H. DONAHUE.

STANLEY E. QUA.

To The Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The undersigned agree with the opinion signed by the Chief Justice and other justices, except with respect to the effect of want of verification by yeas and nays of the vote on the motion to reconsider.  Apart from reconsideration, there was final action upon the proposed amendment.  The motion to reconsider had the purpose to annul that final action, and to subject the proposed amendment to the uncertainty of another vote.  We think that the adoption of such a motion was "an unfavorable vote" at a "stage preceding final action," requiring a vote "verified by call of the yeas and nays" under § 4 of Part IV of Amendment 48

to the Constitution. Accordingly we are of opinion that the third question should be answered "No" and the fifth question "Yes." Until the motion to reconsider is acted upon in accordance with the Constitution, it cannot be determined whether the vote of June 11, 1935, will stand as "final action" or not, and consequently question 1 cannot be answered categorically.

FRED T. FIELD.
HENRY T. LUMMUS.