# OPINIONS OF THE JUSTICES.

### OPINION OF THE JUSTICES TO THE ACTING GOVERNOR.

*Constitutional Law,* Amendment of the Constitution, Initiative petition, Governor, General Court. *Governor. General Court. Supreme Judicial Court,* Opinions of the Justices.

The Justices addressed a question posed by the Acting Governor who had expressed grave doubts as to the nature and extent of her constitutional power and duty to call a joint session of the General Court under art. 48 of the Amendments to the Constitution of the Commonwealth, where the Acting Governor's obligation to call a joint session related to an important question of law and described uncertainty as to a present constitutional obligation. [1204]

An adjournment of a joint session of the two houses of the General Court by a roll call vote, at a time when three proposals to amend the Constitution were before the joint session, was not "final action" on "a proposed constitutional amendment" pursuant to Part IV, § 4, of art. 48 of the Amendments to the Constitution of the Commonwealth, such that the power and duty of the Acting Governor to recall the joint session under art. 48 would attach. [1204-1205]

The Justices declined to answer, doubting the existence of a "solemn occasion," a question by the Acting Governor that, if there had not been final action by a joint session of the two houses of the General Court on a proposed constitutional amendment, could the Acting Governor, using her judgment, reasonably determine whether the controversy had reached the "limits of futility," such that she could decline to recall the joint session under Part IV, § 2, of art. 48 of the Amendments to the Constitution of the Commonwealth. [1205-1206]

On December 20, 2002, the Justices submitted the following answers to questions propounded to them by the Acting Governor.

To Her Honor, the Acting Governor of the Commonwealth:

The undersigned Justices of the Supreme Judicial Court respectfully submit their responses to the following questions set forth in a request transmitted to us on December 3, 2002.

"1. Does adjournment by a roll call vote (137 yeas to 53 nays) of the joint session constitute final action on a proposed constitutional amendment such that the Gover-

nor's power and duty to recall the joint session under Article 48 do not attach?

"2. If there has not been final action by the joint session, may the Governor, using her judgment, reasonably determine whether this controversy has reached the 'limits of futility,' *LIMITS* v. *President of the Senate*, 414 Mass. 31, 32 n.4 (1992),[1] such that she may decline to recall the joint session under Article 48?"

The Acting Governor's request recites that an initiative amendment "relative to the protection of marriage" (House No. 4840)[2] was signed by sufficient voters to require its transmission to the Legislature under art. 48 of the Amendments to the Constitution of the Commonwealth. The Acting Governor's request further recites that, in addition to House No. 4840, several members of the General Court introduced a petition for a legislative amendment to the Constitution "relative to a vacancy in the office of Governor or Lieutenant-Governor" (House No. 799),[3] and a member of the House of Representatives introduced a separate petition for a legislative amendment

---

[1]As the Acting Governor's brief noted, the correct reference is footnote 5.

[2]The text of the initiative amendment (House No. 4840) is as follows:

"The Constitution of the Commonwealth of Massachusetts shall be amended by adding to the articles of amendment thereto the following article: —

"It being the public policy of this Commonwealth to protect the unique relationship of marriage in order to promote, among other goals, the stability and welfare of society and the best interests of children, only the union of one man and one woman shall be valid or recognized as a marriage in Massachusetts. Any other relationship shall not be recognized as a marriage or its legal equivalent, nor shall it receive the benefits or incidents exclusive to marriage from the Commonwealth, its agencies, departments, authorities, commissions, offices, officials and political subdivisions. Nothing herein shall be construed to effect an impairment of a contract in existence as of the effective date of this amendment."

[3]The text of the legislative amendment (House No. 799) is as follows:

"Section II of Chapter II of Part the Second of the Constitution of the Commonwealth is hereby amended by striking out Article III and inserting in place thereof the following two articles:

"Article III. Whenever the chair of the governor shall be vacant, by reason of his death, resignation or removal, the lieutenant governor shall become governor. Whenever the chair of the governor shall be vacant by reason of his absence from the commonwealth, or otherwise, except for his death, resignation or removal, the lieutenant governor for the time being, shall, during such vacancy, perform all the duties incumbent upon the governor, and shall have

to the Constitution "relative to the tenure of judicial officers" (House No. 3357).[4] The proposed initiative and legislative amendments, House No. 4840, House No. 3357, and House No. 799, were laid before a joint session on May 1, 2002. The joint session recessed until June 19, 2002, and then again until July 17, 2002, at which time the joint session voted by roll call — one hundred thirty-seven yeas to fifty-three nays — to adjourn. The Acting Governor's request to the Justices states that "[t]o date, the Legislature has not reconvened the joint session and, based on recent public and private statements from legislative leaders, does not intend to reconvene."

Article 48 establishes the constitutional framework for legislative action on proposed constitutional amendments. Article 48, The Initiative, Part IV, § 1, provides that a proposed amendment introduced in the General Court by initiative petition "shall be designated an initiative amendment, and an amendment introduced by a member of either house shall be designated a legislative substitute or a legislative amendment." Both initiative amendments and legislative amendments must be laid before a joint session of the General Court "not later than the second Wednesday in May." Art. 48, The Initiative, Part IV, § 2, as amended by art. 81, § 2, of the Amendments. That section further provides that, if the two houses fail to agree on a time for holding any joint session or fail to continue a joint session "until final action has been taken upon all amendments pending, the governor shall call such joint session or continuance thereof." *Id.* An initiative amendment receiving the affirmative vote of not less than one-fourth of all the members elected at the joint sessions of two General Courts is submitted to the people at the next general election, while a legislative

---

and exercise all the powers and authorities, which by this constitution the governor is vested with, when personally present.

"Article IV. Whenever the office of lieutenant governor shall become vacant, the governor shall nominate a lieutenant governor who shall take office upon confirmation by a majority vote of both the house of representatives and the senate."

[4]The text of the legislative amendment (House No. 3357) is as follows:

"Article I of Chapter III of Part the Second of the Constitution of the Commonwealth is hereby amended by inserting after, shall hold their offices, the following: — for a term of six years. Sixty days prior to the expiration of the six year term of office, the name of a judicial officer shall be presented to the executive council for reappointment. If reappointed, his term of office shall be for an addition six years, subject to reappointment as previously provided."

amendment requires the affirmative vote of a majority of all the members elected at two successive joint sessions in order to be placed on the ballot. Art. 48, The Initiative, Part IV, §§ 4, 5.

The threshold inquiry we must address is whether the Justices have the authority to answer the questions posed by the Acting Governor. Under Part II, c. 3, art. 2, of the Constitution of the Commonwealth, as amended by art. 85 of the Amendments, "[e]ach branch of the legislature, as well as the governor or the council, shall have authority to require the opinions of the justices of the supreme judicial court, upon important questions of law, and upon solemn occasions." The Justices repeatedly have described their obligation as a "duty to render opinions only when they are properly required, and to abstain from answering questions of law not required under this provision." *Opinion of the Justices*, 430 Mass. 1205, 1207 (2000). See *Opinions of the Justices*, 427 Mass 1211, 1212 (1998). "A solemn occasion exists 'when the Governor or either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes.' . . . The solemn occasion provision traditionally has been construed strictly" (citations omitted). *Answer of the Justices*, 426 Mass. 1201, 1203 (1997), quoting *Answer of the Justices*, 364 Mass. 838, 844 (1973).

In her request to the Justices, the Acting Governor states that "a dispute exists as to whether final action has taken place in this instance where the joint session adjourned by roll call prior to acting upon the proposed constitutional amendments before it. Accordingly, the [Acting] Governor has grave doubts as to the nature and extent of her constitutional power and duty to call the joint session under Article 48." The Acting Governor's obligation to call a joint session relates to an important question of law and describes uncertainty as to a present constitutional obligation. We therefore address the Acting Governor's first question.[5]

Part IV, § 4, of art. 48, The Initiative, provides:

---

[5]We note that the joint session was adjourned on July 17, 2002. The Acting Governor's questions were not submitted until December 3, 2002. The current General Court ends on December 31, 2002. On past occasions, the Justices have declined to answer requests when there was insufficient time to do so. See, e.g., *Answer of the Justices*, 401 Mass. 1234 (1988); *Answer of the Justices*, 399 Mass. 1201 (1987).

"Final legislative action in the joint session upon any amendment shall be taken only by call of the yeas and nays, which shall be entered upon the journals of the two houses; and an unfavorable vote at any stage preceding final action shall be verified by call of the yeas and nays, to be entered in like manner. At such joint session a legislative amendment receiving the affirmative votes of a majority of all the members elected, or an initiative amendment receiving the affirmative votes of not less than one-fourth of all the members elected, shall be referred to the next general court."

The joint session of the two houses of the General Court required by art. 48 is a legislative assembly and by necessity possesses the ordinary prerogatives of a deliberative legislative body. See *Opinion of the Justices*, 291 Mass. 578, 582-583 (1935). "One of these is to adopt rules for the regulation of its conduct." *Id.* These can include, among other rules, acting on a motion to recess or adjourn. In this instance, the joint session, using its own procedures, adjourned on July 17, 2002. There were at that time three proposals to amend the Constitution laid before the joint session: House No. 4840, House No. 3357, and House No. 799. The vote taken on July 17, 2002, was a single vote to adjourn the joint session. No determination can be made, therefore, as to whether any proposed constitutional amendment received the number of votes — different for initiative and legislative amendments — required by art. 48 of the Constitution if the amendment is to be "referred to the next general court." Accordingly, the vote of July 17, 2002 was not "final action" on "a proposed constitutional amendment" pursuant to Part IV, § 4, of art. 48. See *LIMITS* v. *President of the Senate*, 414 Mass. 31 (1992); *Opinion of the Justices*, 386 Mass. 1201, 1211-1212 (1982); *Opinion of the Justices*, 334 Mass. 745, 749 (1956); *Opinion of the Justices*, 291 Mass. 578, 586-587 (1935).

We answer question 1, "No."

We next address the Acting Governor's second question.

We note that the question could be construed to ask whether the Governor, as a general rule, possesses the power or discretion to determine that calling a joint session would be futile. Alternatively, it could ask whether, given the circumstances described in the Acting Governor's request, the Acting Governor may determine at this time that the controversy has in fact

reached the "limits of futility." According to her brief, the Acting Governor "does not take a position on whether the present circumstance has risen to the level of futility and seeks only the Justices' guidance on her power to determine whether such futility exists." Our response therefore is directed only to the question whether the Governor possesses the power to determine whether such futility exists.

Part IV, § 2, of art. 48, provides in pertinent part that, "if the two houses . . . fail to continue the same [joint session] from time to time until final action has been taken upon all amendments pending, the governor shall call such joint session or continuance thereof." Article 48 does not require final action by any specified time. *Opinion of the Justices*, 291 Mass. at 586. The time within which the joint session must act on the proposed amendments continues until December 31, 2002, when the term of the current General Court will end. Art. 10 of the Amendments to the Constitution of the Commonwealth.

The Acting Governor's question 2 may appear to present a "solemn occasion" on which the Justices would be authorized to render an opinion. Yet, defined as the Acting Governor has specified in her brief, the question does not present a "solemn occasion" as we shall now explain. In *LIMITS* v. *President of the Senate*, *supra* at 34 n.5, the court accepted the view stated in *Opinion of the Justices*, 334 Mass. at 758-759, that a Governor need not recall a joint session "even though final action on all proposed amendments has not been taken" whenever the Governor "has made a genuine effort to secure action by joint session and has become reasonably convinced that it will be impossible to secure" such action. Where "courts have spoken to issues raised by the question posed," the Justices have refrained from giving advisory opinions. *Answer of the Justices*, 375 Mass. 790, 794 (1978). Justices have applied this principle of restraint in similar circumstances. See *Answer of the Justices*, 413 Mass. 1219, 1225 (1992), and cases cited.

As the court has already addressed the question regarding the existence of the Governor's power, there is no solemn occasion requiring the Justices to answer. *Answer of the Justices*, 413 Mass. 1219, 1224 (1992). We respectfully decline to answer Question 2.

The foregoing answer and opinion are submitted by the Chief Justice and the Associate Justices subscribing hereto on the twentieth day of December, 2002.

MARGARET H. MARSHALL

JOHN M. GREANEY

RODERICK L. IRELAND

FRANCIS X. SPINA

JUDITH A. COWIN

MARTHA B. SOSMAN

ROBERT J. CORDY